# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL SULLIVAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 5660 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| F.E. MORAN, INC. FIRE PROTECTION ) | |
| OF NORTHERN ILLINOIS, an Illinois ) | |
| corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Michael Sullivan, brought this employment-discrimination action against F.E. Moran, Inc. Fire Protection of Northern Illinois ("FPN") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. For the reasons explained below, the Court grants FPN's motion for summary judgment and denies as moot FPN's motion to strike certain of plaintiff's responses to FPN's statement of undisputed facts and certain of plaintiff's exhibits and additional statements of undisputed facts.

## LOCAL RULE 56.1 AND FPN'S MOTION TO STRIKE

Before the Court discusses the undisputed material facts, it must address plaintiff's Local Rule 56.1 submissions. FPN moves to strike portions of plaintiff's response to its statement; portions of plaintiff's statement of additional facts; and certain exhibits. FPN argues, among other things, that portions of plaintiff's response fail to cite evidence that supports a dispute; contain statements that are not responsive to FPN's statements; improperly assert additional facts in response; and misstate the evidence that is cited. FPN further argues that portions of

plaintiff's statement of additional facts are not concise; fail to cite supporting evidence; and cite evidence that does not support the statement.

In response, plaintiff characterizes defendant's arguments as "frivolous and obstructionist." (ECF No. 141, Pl.'s Resp. Def.'s Mot. Strike at 1.) The Court disagrees; plaintiff's submissions are deficient in many respects, so defendant's arguments are generally well founded. Nonetheless, for reasons of judicial economy, the Court denies defendant's motion as moot because in ruling on every motion for summary judgment, the Court conducts its own examination of the parties' Local Rule 56.1 submissions to determine whether they comply with the Rule. To the extent that portions of either party's submissions are not compliant, or include immaterial facts, the Court has disregarded them. The Court has also disregarded the legal arguments contained in the fact statements. Such arguments belong in memoranda, not Rule 56.1 submissions. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008).

## MATERIAL FACTS

### A. Plaintiff's Employment with FPN

Plaintiff is an African-American sprinkler fitter. (ECF No. 126, Pl.'s Resp. Def.'s Stmt. Facts ¶ 2; ECF No. 138, Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 1.) He began his career as a sprinkler fitter in 1990, when he started in the Local 281 apprentice program. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 1.) Plaintiff completed that program in 1995 and became a journeyman fitter. (*Id.*)

In the sprinkler-fitter industry, fitters rely on word of mouth to obtain employment, and jobs vary based on work availability. (Pl.'s Resp. Def.'s Stmt. Facts ¶ 7.) When a particular project nears completion, FPN transfers the assigned fitters to a new job site, lays them off, or

"loans" them to another company. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 17.) FPN also maintains a record of available fitters who are not assigned to a project. (*Id.*) Unassigned fitters can choose to "sit" on the "available list" and wait for FPN to notify them when work becomes available, but they do not earn wages when unassigned, and they are free to find work with other companies. (*Id.*) FPN superintendents are responsible for contacting fitters when work is available, hiring them, assigning them to projects, transferring them between projects, terminating them from projects, and laying them off. (*Id.*; Pl.'s Resp. Def.'s Stmt. Facts ¶ 12.)

On June 4, 2012, plaintiff emailed his résumé to FPN Superintendent Rick Nelson. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 2.) Nelson and FPN Superintendent Scott Acred then interviewed plaintiff. (*Id.*) On July 14, 2012, FPN hired plaintiff for the position of journeyman fitter on its job at Harper Court in Chicago. (Pl.'s Resp. Def.'s Stmt. Facts ¶ 25.) Journeymen, foremen, and apprentices share the responsibilities of installing sprinkler systems in the field. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 16.) Foremen work alongside the crew and have additional responsibilities that include assigning job duties to fitters, resolving problems on the job, communicating with superintendents and those in other trades, and managing the project's progress. (Pl.'s Resp. Def.'s Stmt. Facts ¶ 10.)

Plaintiff worked under Nelson. (*Id.* ¶ 27.) Nelson called plaintiff when work was available for him and provided plaintiff job assignments. (*Id.*) There were times when plaintiff was employed by FPN when he was told that there was no work available and he would have to "sit." (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 18.) At one point in June 2013, plaintiff was laid off and then rehired approximately three weeks later. (*Id.*)

After the job at Harper Court, plaintiff was transferred to other FPN jobs, including a portion of a job at the University of Chicago Laboratory Schools (the "Lab School Job"). (Pl.'s

3

Resp. Def.'s Stmt. Facts ¶ 28.) The Lab School Job and certain other projects to which plaintiff was assigned had goals or requirements for minority hiring or local hire (fitters who lived in a certain area). (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶¶ 3, 7-9.)

Ron Berek was the FPN foreman assigned to the Lab School Job. (Pl.'s Resp. Def.'s Stmt. Facts ¶ 18.) Initially, plaintiff had no problems working with Berek. (*Id.* ¶ 28.) According to plaintiff, "things changed, it seemed," when Brian Manning and Stephen Spodarek, fellow FPN fitters, began working on Phase 2 of the Lab School Job on, respectively, October 28, 2013 and November 6, 2013. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 20; Pl.'s Resp. Def.'s Stmt. Facts ¶ 29; ECF No. 118-1, Def.'s Ex. A, Dep. of Michael Deon Sullivan at 94.) Plaintiff says that Berek acted "distant" with him, but was friendly to Manning and Spodarek; assigned plaintiff to less-favorable "apprentice-type" work and did not rotate his assignment to other jobs at the site; subjected plaintiff to extra scrutiny; blamed him for Manning and Spodarek's mistakes; and "chewed out" plaintiff for his work "more than [was] necessary." (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶¶ 21-24; Pl.'s Resp. Def.'s Stmt. Facts ¶ 30.) Although plaintiff "blew up" one day and yelled at Berek about this treatment, he admits that did not complain to FPN about Berek, nor did he complain to anyone at FPN about harassment or discrimination. (Sullivan Dep. at 164-65, 195.) Plaintiff also admits that Berek did not make any race-based comments to him. (*Id.* at 196.)

On February 6, 2014, Nelson asked plaintiff to come into the office. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 35.) Plaintiff had been "sitting," unassigned to a project since January 8, 2014. (*Id.*) When plaintiff came to the office, Nelson told him that he was going to be let go because FPN did not have any work for him. (*Id.*) Nelson testified at his deposition that he and Superintendent Acred made the decision to lay off plaintiff due to a lack of work. (ECF No.

4

118-7, Def.'s Ex. G, Dep. of Rick Nelson at 164-65.) Acred testified at his deposition that he had nothing to do with Sullivan's termination and that Nelson had made that decision. (ECF No. 140-1, Pl.'s Ex. 3, Dep. of David Scott Acred at 206-07.) On plaintiff's Notice of Termination from FPN, the box corresponding to "Reduction in Force" is checked, beneath the heading "Reason for Termination" and sub-heading "Layoff." (ECF No. 140-4, Pl.'s Ex. 35.) The notice indicates that plaintiff was eligible for rehire. (*Id.*) Two non-African-American fitters were laid off on the same day as plaintiff, also for a "Reduction in Force." (Pl.'s Resp. Def.'s Stmt. Facts ¶ 59; ECF No. 118-20, Def.'s Ex. T.) Manning and Spodarek were not laid off and continued working on FPN's projects at the University of Chicago. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 36.)

Plaintiff says that after his layoff, he sent Nelson a text in March 2014 and another text in April 2014, seeking to be rehired. (*Id.* ¶ 40.) FPN did not rehire plaintiff.

**B.  Administrative Charges**

On January 22, 2014, plaintiff filed a Complaint of Discrimination against FPN with the United States Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP"). (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 32.) In the sections of the OFCCP Complaint that contain boxes to check for the alleged type of discrimination and the allegedly discriminatory actions, plaintiff checked the boxes for "Race" and "Color" discrimination, as well as the actions of "Hiring," "Layoff," "Recall," "Job Assignment," and "Intimidation." (ECF No. 140-4, Pl.'s Ex. 40, at 2-3.) In the section of the Complaint that sought a detailed description of the alleged discriminatory acts, plaintiff stated in full:

> As it pertains [to] all work and especially federally funded contracts I was the first to have to sit at home when work got slow. Even [when] it wasn't slow I was made to sit at home. As a result of this the apprentice working for [the]

5

company has grossed more money than I have this past year. I absolutely know that I've been treated differently because of my race and color.

(*Id.* at 4.) The OFCCP transferred the Complaint to the Equal Employment Opportunity Commission ("EEOC") on June 10, 2014. The EEOC then assisted plaintiff in drafting an EEOC Charge of Discrimination against FPN, which was filed on July 11, 2014. (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 32.) In the section of the Charge form that contains boxes to check for the type of discrimination alleged, plaintiff checked the boxes for "Race" and "Age." (ECF No. 140-4, Pl.'s Ex. 38, at 1.) In the "particulars" section of the form, plaintiff stated in full:

> I began my employment with [FPN] in or around July, 2012. My most recent position was Sprinkler Fitter. I was the only African American employee. During my employment, I was [] subjected to different terms and conditions of employment than other, non-black employees, including but not limited to, being given less work hours and assignments. On or about February 7, 2014, I was discharged. Subsequently, [FPN] hired other, non-black employees.
>
> I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> I believe I have been discriminated against because of my age, 52, . . . in violation of the Age Discrimination in Employment Act of 1967, as amended.

(*Id.*) After investigating, the EEOC dismissed plaintiff's Charge on March 16, 2016, stating that it was "unable to conclude that the information obtained establishes violations of the statutes." (ECF No. 118-1, Def.'s Ex. 41 to Def.'s Ex. A.)

This lawsuit ensued. Plaintiff's complaint is organized into three counts. Counts I and II allege violations of Title VII based on a hostile work environment and race discrimination. Count III alleges unlawful race discrimination in violation of 42 U.S.C. § 1981.

## DISCUSSION

### A. Legal Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). A factual dispute is "genuine" only if a reasonable jury could find for either party. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014). Rule 56 imposes the initial burden on the movant to inform the court why a trial is not necessary. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, the movant's initial burden may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (internal quotation marks and citation omitted). The nonmovant need not produce evidence in a form that would be admissible at trial, but he must go beyond the pleadings to demonstrate that there is evidence upon which a jury could find in his favor. *Id.* at 1168-69 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

### B. Exhaustion

Under Title VII, a plaintiff must file a charge with the EEOC or other appropriate administrative agency before proceeding with a federal case and can only pursue those claims "like or reasonably related to" the allegations contained in the charge. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 n.2 (7th Cir. 2004). "This rule serves two purposes:

affording the EEOC the opportunity to settle the dispute between the employee and employer, and putting the employer on notice of the charges against it." *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003). "[C]laims are not alike or reasonably related unless there is a factual relationship between them. This means that the [administrative] charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (citation, internal quotation marks, and emphasis omitted). When a complaint raises a different theory of discrimination than was raised in the administrative charge, a court must be able to reasonably infer the different theory of discrimination from the facts alleged in the charge in order for the complaint to fall within the scope of the charge. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003); *see also Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005) ("[T]o determine whether a claim raised in a complaint is within the scope of the earlier-filed EEOC charge, we ask what EEOC investigation could reasonably be expected to grow from the original charge.").

Plaintiff's claims against FPN are based on five forms of employment discrimination: (1) disparate treatment (of plaintiff individually); (2) disparate impact (of FPN's policies on plaintiff and other black workers); (3) a pattern and practice of discriminating against minorities; (4) a hostile work environment; and (5) FPN's failure to rehire plaintiff for other jobs. FPN argues that plaintiff failed to exhaust his administrative remedies for his Title VII claims premised on the latter four.

In response, plaintiff addresses only the failure-to-rehire and hostile-work-environment claims.[1] He contends that his OFCCP complaint was expressly based on "hiring, layoff, *recall*, and job assignment" (emphasis the Court's) and thus included the failure to rehire him. He also points out that in his EEOC Charge, he complained that after he was discharged, FPN hired "other, non-black employees." An investigation of FPN's failure to rehire plaintiff could reasonably be expected to grow from those allegations, so plaintiff's claim for failure to rehire falls within the scope of his administrative charges.[2]

Plaintiff's hostile-work-environment claim appears to be multifaceted and is therefore slightly more complicated. The claim seems to be based in part on complaints that plaintiff was given fewer job assignments than non-African-American fitters and was restricted to assignments for which FPN needed to fulfill minority-hiring obligations or goals. Those allegations unquestionably fall within the scope of plaintiff's administrative charges, and the Court will address them in the context of plaintiff's disparate-treatment claim, but they are not allegations of a hostile work environment. A hostile work environment by nature exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

---

[1]Plaintiff does not contend, nor is there any evidence to support a conclusion, that his disparate-impact and pattern-and-practice claims are like or reasonably related to his administrative charges. Accordingly, the Court grants FPN's motion for summary judgment as to plaintiff's disparate-impact claim (which, had it survived, would support liability under Title VII only and not § 1981, *see Mozee v. American Commercial Marine Service Co.*, 940 F.2d 1036, 1051 (7th Cir. 1991)), and to the extent that plaintiff's Title VII claims are based on an alleged pattern and practice of unlawful discrimination. Furthermore, plaintiff does not contend, nor is there any evidence to support a conclusion, that FPN had a pattern and practice of racial discrimination (nor, for that matter, is there evidence supporting plaintiff's disparate-impact claim). The Court therefore grants FPN's motion for summary judgment as to plaintiff's pattern-and-practice claim.

[2]FPN asserts that plaintiff's failure-to-rehire claim under § 1981 is time-barred. The Court assumes, without deciding, that the claim is not time-barred and assesses it on the merits.

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002); *see also Smith v. Rosebud Farmstand*, 909 F. Supp. 2d 1001, 1005 (N.D. Ill. 2012) (dismissing racial-harassment claim as beyond the scope of plaintiff's EEOC charge and explaining that "[b]eing sent home from work and suffering a reduction in hours are classic examples of race discrimination, which is a different claim from being harassed with racial epithets, slurs, and comments"). Plaintiff's hostile-work-environment claim is also based on the claims that Berek assigned him to "low-skilled labor," blamed him for mistakes made by less-experienced, non-African-American fitters, and yelled at him. (ECF No. 125, Pl.'s Resp. Def.'s Mot. Summ. J. at 14-15.) It is undisputed that in the EEOC proceedings, plaintiff provided a handwritten narrative to the EEOC in which he described poor treatment by Berek over the course of one week beginning on October 28, 2013 (albeit plaintiff described "critiquing," not yelling, and did not mention being blamed for others' mistakes). (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 33; ECF No. 140-1, Pl.'s Ex. 9.) Although the narrative does not describe treatment that rises to the level of a hostile work environment (as opposed to alleged disparate treatment), the Court concludes that plaintiff's narrative was sufficient to place the EEOC on notice that plaintiff intended the agency to investigate that theory of discrimination, regardless of the fact plaintiff did not give it such a label, and it is therefore within the scope of plaintiff's Charge. *See, e.g.*, *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 952-53 (N.D. Ill. 2015).

## C. Disparate Treatment, Hostile Work Environment, and Failure to Rehire

Plaintiff alleges that FPN discriminated against him because he is African American. The Court analyzes Title VII and § 1981 claims under the same framework. *Lane v. Riverview Hosp.*, 835 F.3d 691, 695 (7th Cir. 2016). The applicable standard at summary judgment is whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race caused the adverse employment actions. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "In applying this standard, evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547-48 (7th Cir. 2017).

Although the Court no longer sorts evidence of purported discrimination into "direct" and "indirect" categories, a plaintiff may still use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), sometimes referred to as the "indirect" method of proof, to make the required showing. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017). Plaintiff opts to proceed under the *McDonnell Douglas* framework, under which he has the initial burden of showing that "(1) he is a member of a protected class; (2) he performed his job to his employer's expectations; (3) he suffered an adverse employment action; and (4) one or more similarly situated individuals outside his protected class received better treatment." *Id.* at 500. "If the plaintiff makes this prima facie showing, the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action." *Id.*

It is undisputed that plaintiff is a member of a protected class. And although FPN disputes the second factor—whether plaintiff was performing his job to FPN's expectations—the Court need not discuss it because the third and fourth prongs of the *McDonnell Douglas* analysis are dispositive. Plaintiff complains about several ways in which he says FPN discriminated against him, but he does not specifically identify, or develop argument about, what he believes constitute the adverse employment actions to which FPN subjected him. As best the Court can tell, they are that plaintiff was "confined to only projects with minority requirements"; he was given fewer hours than other fitters; he was "never offered [the] opportunity" to be "loaned out" to other sprinkler-fitter companies; he suffered "humiliating and degrading" treatment by Berek; he was laid off; and he was not rehired. (Pl.'s Resp. Def.'s Mot. Summ. J. at 2, 8, 9, 12, 14.)

Plaintiff fails to submit evidence from which a reasonable factfinder could conclude that the first two purported adverse actions occurred. Assuming for the sake of argument that the minority-hiring goals or requirements for projects to which plaintiff was assigned somehow render plaintiff's assignments to those projects adverse employment actions (plaintiff does not explain how this is so, nor does he contend that his duties on those projects were any different), plaintiff fails to properly support his assertion that he was "confined" to projects with such requirements. He merely cites his own perception, expressed at his deposition, that he was "pretty much confined to those jobs where there was minority participation needed," and contends in his fact statement, without citing evidence that wholly supports the contention, that "there were only five days" when he was assigned to work on projects that did not have such

requirements. (Pl.'s Stmt. Add'l Facts ¶ 12.)³ Similarly, plaintiff fails to support with evidence (or even cite to evidence that purportedly supports) his conclusory assertion that he was given fewer hours than non-African-American fitters. While plaintiff complains that he was never given the opportunity to be "loaned" to another employer, plaintiff does not point to evidence that the "loans" occurred during the relevant time period or were an option at the times he was unassigned, and he does not present evidence, or even contend, that he asked for or otherwise sought out the opportunity and was denied. The lack of an "offer" was not an adverse employment action. *See Latham v. Donahue*, 40 F. Supp. 3d 1023, 1029 (N.D. Ill. 2014) (alleged loss of overtime was not an adverse employment action where plaintiff provided no evidence that she asked for overtime work and was denied).

As for Berek's conduct, plaintiff has failed to establish that the totality of the behavior he describes was sufficiently severe or pervasive as to create a hostile work environment. That Berek was "standoffish" and "distant" does not help plaintiff establish an objectively hostile work environment. *See McKenzie v. Milwaukee Cty.*, 381 F.3d 619, 624-25 (7th Cir. 2004). Plaintiff makes no effort to argue how frequently Berek assigned him to "low-skilled" work (which plaintiff deems "crappy," (Sullivan Dep. at 92), but not outside his job duties) or failed to rotate his assignment, "chewed [him] out," or blamed him for others' mistakes. When plaintiff

---

³On a related note, plaintiff asserts that he was the "only African-American fitter" at FPN during his employment there. (Pl.'s Stmt. Add'l Facts ¶ 14.) He cites only his EEOC charge in support of this statement, which is not competent evidence on the issue. Moreover, FPN submits competent evidence to the contrary. Plaintiff also characterizes himself as FPN's "token, non-racially ambiguous minority," explaining in a curious argument that although Manning "identified as Asian" because his mother is Vietnamese and Spodarek "suddenly . . . became 'Hispanic'" with "newly found ethnicity" upon notifying FPN that his grandfather was Mexican, FPN management was "unaware" that Manning and Spodarek were "purportedly minorities," yet "used" them to "meet minority requirements." (Pl.'s Resp. Def.'s Mot. Summ. J. at 1-2, 10, 14.)

was asked at his deposition how often Berek "chewed [him] out," he responded: "I don't know how often," and, when pressed, "More than necessary," and "Often enough." (Sullivan Dep. at 89-90.) Plaintiff asserted that Berek "always" blamed him for mistakes for which he was not responsible, but actually described only one such instance. (*Id.* at 90-91, 197.) At most, plaintiff describes a demanding boss, but not severe or pervasive hostility.[4]

The remaining operative adverse employment actions are plaintiff's layoff and FTN's failure to rehire plaintiff. Plaintiff argues that similarly-situated non-African-American fitters were not laid off and then not rehired. "The similarly-situated analysis calls for a flexible, common-sense examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (internal quotation marks and citation omitted). "All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The 'similarly situated' prong establishes whether all things are in fact equal." *Id.* (internal quotation marks and citation omitted). "Its purpose is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus." *Id.* (internal quotation marks and citation omitted). Similarly-situated employees need not be identical to plaintiff in "every conceivable way," but they must be "directly comparable" to him in "all material respects." *Id.* "In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would

---

[4] And, as discussed below, even if plaintiff's working conditions were hostile and the hostility were severe and pervasive, there is no evidence of a *racially* hostile environment or that similarly-situated employees were treated better.

distinguish their conduct or the employer's treatment of them." *Id.* at 847 (internal quotation marks and citation omitted). Also frequently considered is whether the employees in question had the same job description and comparable experience, education, and other qualifications. *Poullard v. McDonald*, 829 F.3d 844, 855 (7th Cir. 2016).

Plaintiff first makes a perfunctory argument that he is "similarly situated to all other FPN journeymen" because they all "had the same qualifications, performed the same work and were subject to similar standards." (Pl.'s Resp. Def.'s Mot. Summ. J. at 7.) The argument is a nonstarter because plaintiff does not offer evidence that supports it; further, plaintiff does not address to whom the other FPN journeymen reported, what levels of experience they had, or what types of projects they worked on, nor does he develop any argument as to how all other FPN journeymen were treated more favorably.

Plaintiff also suggests that Manning and Spodarek were similarly situated to him, even though they were not journeymen, but apprentices, for most of the time (Manning) or the entire time (Spodarek) that they worked with plaintiff.[5] The argument is at odds with plaintiff's contention that he has "much more experience than fitters Spodarek and Manning." (Pl.'s Stmt. Add'l Facts ¶ 22.) Plaintiff makes no effort to discuss how Manning and Spodarek were similarly situated in all material aspects, or even what those aspects are, and simply claims that it is "uncontested that they are similarly situated" because FPN compares their performances to plaintiff's and cites certain portions of their testimony. (Pl.'s Resp. Def.'s Mot. Summ. J. at 7.) But it clearly is contested whether Manning and Spodarek are similarly situated to plaintiff, there

---

[5]Spodarek became a journeyman sprinkler fitter on October 22, 2014. (Pl.'s Resp. Def.'s Stmt. Facts ¶ 19.) Manning became a journeyman sprinkler fitter on January 16, 2013. (*Id.* ¶ 22.)

15

is evidence to the contrary, and plaintiff ignores that it is his burden to identify evidence from which a reasonable factfinder could so conclude. He fails to meet that burden.

Plaintiff argues that "[i]f the evidence does not fit *McDonnell Douglas*, the court can take a step back and consider all the evidence as a whole, and determine whether a reasonable trier of fact could conclude [plaintiff] was discriminated against." (*Id.* at 3.) More precisely worded, the fundamental question is whether the evidence would permit a reasonable factfinder to conclude that plaintiff's race caused the adverse employment actions. The answer is no. Even if Berek's treatment of plaintiff could be characterized as an adverse employment action, there is no evidence whatsoever that Berek's motivation for assigning plaintiff to particular tasks within a job, criticizing plaintiff for his performance (which falls within Berek's role as plaintiff's supervisor), or expecting more from him than from the less-experienced Manning and Spodarek was related to plaintiff's race. Plaintiff's attempt to characterize his workplace difficulties with Berek as a "racially poisonous environment," (Pl.'s Resp. Def.'s Mot. Summ. J. at 15), falls flat because he does not show any connection between these events and his race. *See Herron*, 388 F.3d at 302-03 (rejecting plaintiff's suggestion that his workplace problems, including difficulties with managers, were racially based, because there was no connection between the occurrences and his race).

There is also no evidence that Nelson or Acred's motivation, as the decisionmakers, for laying plaintiff off and not rehiring him was related to plaintiff's race. Plaintiff attempts to demonstrate a racial basis by citing a portion of Acred's deposition testimony and pointing to three emails. Even taken together, this evidence does not permit an inference that Nelson or Acred bore a discriminatory animus against plaintiff due to his race. At his deposition, Acred

16

admitted that prior to his employment with FPN (which began in 1996), he had once used a phrase containing "the n word" in his garage in a friend's presence. (Acred Dep. at 12, 58-60, 215-216.) This isolated comment was not made in or related to the workplace, and it was not contemporaneous with or related to plaintiff's employment with or layoff from FPN, so it is insufficient to support an inference of discrimination. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir. 2016) ("Remarks can raise an inference of discrimination when they are (1) made by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action.") (internal quotation marks and citation omitted); *Markel v. Bd. of Regents of the Univ. of Wis. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002). Next, plaintiff points to a February 2012 email that Nelson and Acred received from an FPN sales employee that referred to putting a white fitter in "black face," as well as a June 2013 email Nelson was sent from the same employee, who implied that "minority workers" file OSHA complaints. (ECF No. 140-6, Pl.'s Exs. 56 & 57.) Nelson and Acred's mere receipt of these emails, which were not connected with plaintiff or contemporanous to the time of his layoff, would not allow a jury to reasonably infer that Nelson and Acred themselves had a discriminatory purpose with regard to plaintiff. Nor would a third email that plaintiff cites, from FPN Superintendent Scott Massoglia to a coworker in February 2012, in which Massoglia made a racial double entendre about buying "a colored" television. (ECF No. 140-6, Pl.'s Ex. 58.) While the remark is undoubtedly offensive, it occurred two years prior to plaintiff's layoff, and it does not permit an inference that Acred and Nelson's decisions were discriminatory. Plaintiff also includes in his Rule 56.1 statement the fact that when he worked with Massoglia on a single day in December 2013, Massoglia "made some black jokes" (plaintiff provides no details) and

17

called him "Webster." (Def.'s Resp. Pl.'s Stmt. Add'l Facts ¶ 25.) Calling plaintiff "Webster" was racially offensive,[6] but plaintiff does not discuss this fact in his response and does not attempt to demonstrate any connection between it or the jokes and the adverse employment actions. Therefore, the stray remarks fail to contribute to any inference of racial animus. *See Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 781 (7th Cir. 2007).

Plaintiff also cites a case pending in this district in which three fitters who were employed by FPN prior to plaintiff's tenure allege race discrimination, and plaintiff maintains that the testimony in that case supports an inference of discrimination here. But other than referring vaguely to FPN's purported "admissions regarding its racially discriminatory practices and animus" in that case, plaintiff fails to explain even basic information about the case such as when the events occurred, who at FPN was involved, or how the facts of that case are related in any way to the issue here—whether *plaintiff* was discriminated against. (Pl.'s Resp. Def.'s Mot. Summ. J. at 12.)

Considering the evidence as a whole, the Court concludes that a reasonable trier of fact could not infer that race discrimination caused the adverse employment actions of which plaintiff complains. In light of this conclusion, the Court need not address FPN's arguments concerning after-acquired evidence and lack of injury.

## CONCLUSION

Defendant's motion for summary judgment [115] is granted, and judgment will be entered in favor of defendant and against plaintiff. Defendant's motion to strike certain

---

[6]The reference appears to be to the title character in a 1980s television series that featured an African-American boy who was adopted by a wealthy white couple.

responses, exhibits, and statements pursuant to FRCP 56(e) and Local Rule 56.1 [134] is denied as moot. Civil case terminated.

**DATE**: April 10, 2018

_____

**Ronald A. Guzmán**
**United States District Judge**